UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| VIRGINIA P. LICHTSINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:05-cv-356 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Virginia P. Lichtsinn brought this suit to contest a denial of disability benefits by Defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"). On July 17, 2006, this Court entered an order that reversed the Commissioner's denial of benefits and remanded the case to the Commissioner for further proceedings. (Docket # 11.) Lichtsinn filed a motion and a supplemental motion to recover attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Docket # 13, 22.) The Commissioner, however, opposes Lichtsinn's fee request, arguing that her litigation position was "substantially justified," or alternatively that the amount of fees sought is excessive and should be reduced. (Docket # 17.)

For the reasons set forth herein, Lichtsinn's motion will be GRANTED in part and DENIED in part, and her supplemental motion will be GRANTED.

## I.  LEGAL STANDARD

Under the EAJA, "[e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). The

substantial justification standard requires that the Commissioner show that its position was grounded in "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000) (internal quotation marks omitted); *see also Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006); *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). The Commissioner bears the burden of establishing that its position was substantially justified. *Cunningham*, 440 F.3d at 863; *Golembiewski*, 382 F.3d at 724.

In making a determination of substantial justification, EAJA fees may be awarded if either the Commissioner's prelitigation conduct or its litigation position was not substantially justified. 28 U.S.C. § 2412(d)(2)(D); *Cunningham*, 440 F.3d at 863 (citing *Golembiewski*, 382 F.3d at 724). However, the court must "make only one determination for the entire civil action." *Golembiewski*, 382 F.3d at 724. Thus, a court must make a "global assessment" to determine whether the Commissioner was "substantially justified in continuing to push forward at each stage." *Hallmark Constr.*, 200 F.3d at 1081.

## II. DISCUSSION

### A. The Commissioner's Position Was Not Substantially Justified

In its July 17, 2006, Order, this Court reversed and remanded the Commissioner's decision, finding that the ALJ's decisions to give reduced weight to the opinion of Lichtsinn's ophthalmologist and to discredit Lichtsinn were not supported by substantial evidence. However, the Court also determined that the ALJ committed no legal error when making his RFC determination, specifically finding that the ALJ was not required to include a sit/stand limitation

in his RFC determination and that he properly assessed Lichtsinn's severe impairments.

The Commissioner maintains that she was substantially justified in defending the ALJ's decision to give the opinion of Lichtsinn's ophthalmologist reduced weight and to discredit Lichtsinn. In addition, the Commissioner contends that the Court's affirmation of the ALJ's RFC determination "suggests that the Commissioner was at least rational in her decision to defend the case." (Def.'s Resp. to Pl.'s Pet. for an Award of Fees & Costs Pursuant to the Equal Access to Justice Act ("Def.'s Resp.") 6.) These arguments will be discussed in turn.

The Commissioner first argues that she was substantially justified in defending the ALJ's decision to afford the opinion of Lichtsinn's ophthalmologist, Doctor Barbara Schroeder, reduced weight because this opinion was inconsistent with other medical evidence. Specifically, the Commissioner points out that in the same paragraph where the ALJ gave reduced weight to Dr. Schroeder's opinion that Lichtsinn could not work full time, the ALJ gave significant weight to the opinion of Lichtsinn's family doctor, Doctor James Ransbottom, who believed that Lichtsinn had a good prognosis and would not be absent from work. According to the Commissioner's argument, the ALJ resolved the alleged conflict between the doctors' opinions in favor of Dr. Ransbottom, a decision that he was entitled to make.[1]

Although at first glance the opinions of Dr. Ransbottom and Dr. Schroeder regarding Lichtsinn's ability to work seemingly conflict, upon further examination this is simply not a case where the ALJ favored one conflicting medical opinion over another. When analyzing the medical opinions of record, the ALJ listed no medical evidence or opinions that contradicted Dr.

---

[1] In addition, the Commissioner argues that "the ALJ took into consideration the opinion of the consulting physician, Dr. Katarki . . . that [Lichtsinn] did not have any visual limitations . . . ." (Resp. Br. 4.) However, this argument is new, as it did not appear in the Commissioner's brief defending the ALJ's decision.

3

Schroeder's opinion regarding how Lichtsinn's visual problems affected her ability to work. In fact, the Court found that the ALJ impermissibly "played doctor" when he discounted Dr. Schroeder's opinion because no other doctor of record, including Dr. Ransbottom, examined Lichtsinn's eyes and rendered an opinion regarding her visual limitations. When an ALJ impermissibly "plays doctor," the government's position is not substantially justified. *See Harris v. Barnhart*, 259 F. Supp. 2d 775, 780-81 (E.D. Wis. 2003) (granting fees because "[t]he Seventh Circuit has stated quite clearly that ALJs must not 'succumb to the temptation to play doctor and make their own independent medical findings.'") (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996))); *Kastman v. Barnhart*, No. 01-C-150, 2002 WL 31163748, *1 (N.D. Ill. Sept. 30, 2002); *Rohan v. Apfel*, No. 95 C 0001, 1997 WL 803867, at *2, (N.D. Ill. Dec. 31, 1997) (granting fees because the ALJ played doctor, "resulting in a flawed decision that the evidence did not support").

Second, the Commissioner argues that she was substantially justified in defending the ALJ's credibility determination specifically pertaining to Lichtsinn's alleged visual limitations. However, the Commissioner fails to carry her burden, as she simply retraces the ALJ's credibility determination and then declares that she was substantially justified because the ALJ "considered factors relevant to [Lichtsinn's] credibility–her daily activities and evidence from medical sources." This conclusory argument is inaccurate because, as the Court noted in its Order, "the *only* specific reason the ALJ gave for discrediting Lichtsinn's alleged visual limitations was that she continues to drive . . . ." (Op. & Order 17 (emphasis added).)

In that regard, the Commissioner's contention that the ALJ supposedly discredited Lichtsinn based on the opinions of Dr. Ransbottom and Dr. Katarki is an incorrect

4

characterization of the ALJ's opinion. There is no discussion of Dr. Ransbottom's or Dr. Katarki's opinions in the ALJ's credibility determination regarding Lichtsinn's visual limitations.[2] *See Golembiewski*, 382 F.3d at 725 ("[T]he Commissioner's argument had no reasonable basis in law because her argument was based upon facts not relied upon by the ALJ"). Furthermore, as noted above, only Dr. Schroeder rendered an opinion regarding Lichtsinn's visual limitations; therefore, the Commissioner's suggestion that Dr. Ransbottom and Dr. Katarki believed that Lichtsinn had no visual limitations is inaccurate.[3] Accordingly, the Commissioner's litigation position on this point was not substantially justified. *See Wates v. Barnhart*, 288 F. Supp. 2d 947, 950 n.1 (E.D. Wis. 2003) ("[A] court should not deny a fee petition based on the Commissioner's re-write of the ALJ's decision.").

Nevertheless, the Commissioner is successful when arguing that she was substantially justified in defending the ALJ's more general credibility determination because Lichtsinn's daily activities were only one factor in the ALJ's credibility analysis. In that regard, the ALJ discredited Lichtsinn because her allegations were "inconsistent with the objective medical evidence, the absence of more aggressive treatment and the claimant's ordinary activities." (Tr. 19.) The Court found that the ALJ oversimplified Lichtsinn's ability to perform daily activities

---

[2] Again, the Commissioner did not rely on Dr. Katarki's opinion in her merits brief when defending the ALJ's credibility determination.

[3] Perhaps the Commissioner is alluding to the argument advanced in her merits brief that Dr. Rasbottom's lack of opinion regarding Lichtsinn's limitations implies that he believed she did not have any visual limitations. However, the Court found that this argument was speculative and was impermissible *post hoc* argument; therefore, this argument cannot provide the basis for substantial justification. *See Cunningham*, 440 F.3d at 865 (contrasting the ALJ's opinion with that in *Golembiewski* and noting that in *Golembiewski* "the Commissioner speculated about why the ALJ rejected Golembiewski's testimony by relying on facts not discussed by the ALJ); *Golembiewski*, 382 F.3d at 725; *Seamon v. Barnhart*, No. 05-C-0013-C, 2006 WL 517631, at *5 (W.D. Wis. Feb. 23, 2006) ("With no apparent sense of irony, defendant defends her position [opposing fees] by making the same post hoc arguments that the magistrate judge rejected in the merits litigation . . . .").

5

and noted that "[t]he Seventh Circuit has recently cautioned ALJs 'against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . .'" (Op. & Order 18 (citing *Mendez v. Barnhart*, 439 F.3d 360, 362-63 (7th Cir. 2006); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005); *Carradine v. Barnhart*, 360 F.3d 751, 755).)

The Seventh Circuit's warning must be taken in context, as it is not a prohibition on using a claimant's daily activities as a means of discrediting her. In fact, such a prohibition would run contrary to 20 C.F.R. § 404.1529(c)(3)(i), which lists the claimant's daily activities as one of many factors the ALJ should consider when rendering a credibility determination. Indeed, the Seventh Circuit has upheld credibility determinations when ALJs discredited claimants based on other factors in addition to the claimant's daily activities. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004); *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002); *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2003).

Although the ALJ's analysis of Lichtsinn's daily activities was not as thorough as it should have been, the Court finds that the Commissioner's position regarding the ALJ's general credibility determination was substantially justified, particularly since the ALJ relied upon other factors when discrediting Lichtsinn. *Compare Cunningham*, 440 F.3d at 865 (finding the government's position regarding the ALJ's credibility determination substantially justified, "even though the ALJ was not as thorough in his analysis as he could have been") *with Golembiewski*, 382 F.3d at 724 (finding the Commissioner's position not substantially justified because the "the ALJ's decision contained no discussion of credibility").

6

Finally, the Commissioner points out that the Court affirmed the ALJ's RFC determination, arguing that "the fact that the Court agreed with these positions taken by the Commissioner suggests that the Commissioner was at least rational in her decision to defend the case." (Resp. Br. 6.) However, "the government's success concerning one small part of its . . . argument does not render either the Secretary's underlying position or the government's overall litigating position substantially justified." *Holden v. Heckler*, 615 F. Supp. 686, 696 (D.C. Ohio 1985); *see also Kopulos v. Apfel*, No. 98 C 4115, 1999 WL 1565201, at * 2 (N.D. Ill. Nov. 15, 1999) ("The fact that plaintiff did not prevail on all the issues presented does not defeat an EAJA fee application); *see generally Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee. The result is what matters.").

At the end of the day, the Court must make only one global determination regarding whether the Commissioner's position was substantially justified. *Golembiewski*, 382 F.3d at 724; *Godbey v. Massanari*, No. 99 C 2690, 2001 WL 1035205, at *2 (N.D. Ill. Sept. 4, 2001); *Lane v. Apfel*, No. 99 C 2640, 2001 WL 521835, at *3 n.6 (N.D. Ill. May 16, 2001) (emphasizing that a court must not count arguments but rather focus on the "totality of the circumstances" when considering whether the Commissioner's position was substantially justified). Judging the totality of the circumstances in this case, the Court finds that the Commissioner's defense of the ALJ's decision was not "substantially justified," given the importance of a proper determination regarding Lichtsinn's visual limitations. As Lichtsinn maintains, her success on the issues pertaining to her visual limitations was a "substantial victory" for her, since any visual

7

limitations the ALJ might find on remand would likely affect the types of jobs she could perform and could perhaps lead to a finding that she was disabled.[4]

### B. Lichtsinn's Request for Fees Is Excessive

The Commissioner alternatively argues that even if its position was not substantially justified, the attorney fees that Lichtsinn requests are excessive. In that regard, Lichtsinn seeks a total of $9,464.20 for 59.9 hours of work spent by two attorneys in this case, with 14.4 hours attributable to Joseph Shull and 45.5 hours attributable to Ann Trzynka.[5] The Commissioner does not contest the number of hours spent by Shull, nor does she contest both attorneys' hourly rate of $158; instead, she argues that the number of hours spent by Trzynka is excessive and should be reduced to a total of 30 hours.[6]

The methodology to be applied to attorney fee awards under the EAJA is essentially the same as that prescribed under 42 U.S.C. § 1988. *Seamon*, 2006 WL 517631, at *5 (citing *INS v. Jean*, 496 U.S. 154 (1990); *Hensley*, 461 U.S. 424). The starting point for determining a reasonable fee is the lodestar, that is, the number of hours reasonably expended on the litigation multiplied by the attorney's reasonable hourly rate. *Id.*

When determining the reasonableness of the hours expended, the court considers several

---

[4] As Lichtsinn argued in her merits brief, near visual acuity is a frequent activity in all of the jobs the ALJ found she could perform at steps four and five. (*See* Tr. 116-21.)

[5] In Lichtsinn's motion for attorneys fees, she maintained that Shull spent 8.65 hours working on this case, and in her supplemental motion, she increased the amount of hours by 5.75 to account for Shull's work on the reply brief.

[6] The Commissioner also argues that Trzynka's fees should be reduced by 1.2 hours for work allegedly spent on other cases on October 10, 2005, December 19, 2005, and February 8, 2006. However, the Commissioner does not explain how she reached the conclusion that Trzynka was spending time on other matters, and it does not appear on the face of Trzynka's affidavit that she was working on other matters.

factors, including the experience and reputation of the attorneys, the time and labor required, the novelty and difficulty of the issues, the legal skill required, the time burdens imposed by the client or the circumstances, and awards in similar cases.[7] *See Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 n.1 (7th Cir. 2003). The claimant bears the burden of demonstrating that the number of hours expended by her attorney was reasonable. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999).

      Here, Trzynka's affidavit in support of the motion for attorney fees reveals that she spent 45.5 hours representing Lichtsinn before this Court, with at least 41.25 hours devoted to researching, writing, and filing the opening brief. The Court believes that spending this much time on an opening brief in a social security case is excessive, even on a brief as well done as this one. Although the Court recognizes that this is one of Trzynka's first social security cases before this Court, the government is not responsible for bearing the costs of training an attorney. *See Hensley*, 461 U.S. at 438 n.13 (finding it proper to reduce the hours of attorney "to account for his inexperience"); *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314-15 (7th Cir. 1996) ("The experience (or inexperience) of an attorney is a permissible reason to depart from the presumptive rate."); *Seamon*, 2006 WL 517631, at *6 (finding that 33.75 hours was an

---

[7] The Commissioner argues that the amount of hours expended here is excessive because it exceeds the twenty to forty hour benchmark recognized by other courts in social security appeals. Although the Commissioner cites to numerous decisions of other courts in support of a forty hour ceiling, she cites to no Seventh Circuit case law. Indeed, the Seventh Circuit seemingly disfavors such a wholesale approach to EAJA fees, noting that the "district court may not arbitrarily reduce the number of hours requested; if it reduces hours it should provide a 'concise but clear explanation.'" *Strickland v. Barnhart*, 141 Fed Appx. 477, 478 (7th Cir. 2005) (quoting *Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 439 (7th Cir. 1992). In fact, in *Upperton v. Barnhart*, No. 02-C-0534-C, 2003 WL 23185891, at *1 (W.D. Wis. Nov. 13, 2003), the district court rejected this same argument advanced by the Commissioner, noting that "the cases she cites are from other jurisdictions and many were decided more than 10 years ago" and that "it is not useful to try to determine what is 'reasonable' on the basis of the so-called 'average' case."

excessive amount of time to spend on a social security opening brief in part because "the government should not have to bear the cost of training a new attorney").

Lichtsinn has not carried her burden of demonstrating why such an inordinate amount of time was spent by Trzynka on the opening brief. Instead, Lichtsinn simply argues that the ALJ's decision was "vague" and that "[t]he findings of the ALJ in the instant case in regard to the treating physician and credibility are quite general," explaining that it took a great deal of time "to comb the record for certain specific facts in regard to the treating physician and credibility issues." (Reply on EAJA Fees 3.) However, the vagueness and generality of an ALJ's decisions pertaining to treating physicians' opinions and the claimant's credibility are a recurrent theme in social security cases; therefore, Lichtsinn fails to demonstrate why this case merited extra time. *See Seamon*, 2006 WL 517631, at *6-7 (reducing attorney's hours in part because "none of the issues raised were new or novel" and because "[t]he legal issues were straightforward").

Furthermore, Trzynka represented Lichtsinn at the administrative level, and therefore she ostensibly was familiar with both the factual background and the legal issues in this case. Indeed, she previously prepared a memorandum to the Appeals Council that presented essentially the same arguments she advanced before this Court, focusing mainly on Dr. Schroeder's opinion and Lichtsinn's alleged visual limitations. Consequently, it is difficult to see why Trzynka needed to spend so much time combing the record to prepare an opening brief.

Accordingly, the Court deems the 45.5 hours spent by Tryzka to be excessive in this case and subtracts fifteen hours from her total. *See Bryant v. City of Chicago*, 200 F.3d 1092, 1102 (7th Cir. 2000) (opining that the district court "may attempt to identify specific hours to be eliminated or it may simply reduce the award across the board . . .") (internal quotation marks

10

omitted); *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("[A] district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." Therefore, Lichtsinn will be awarded $2,275.20 for Shull's fees and $4,819.00 for Trzynka's fees, for a total of $7,094.20 in attorney's fees.

### III. CONCLUSION

For the foregoing reasons, Lichtsinn's motion (Docket # 13) is GRANTED in part and DENIED in part, and her supplemental motion (Docket # 22) is GRANTED. The Court awards Lichtsinn attorney fees in the amount of $2,275.20 for Shull's work (14.4 x 158 = 2,275.20) and $4,819.00 for Trzynka's work (30.5 x 158 = 4,819.00), for a total of $7,094.20 in attorney's fees.

SO ORDERED.

Enter for December 19, 2006.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge